UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

----------------------------------------------------------------X
: 
ERIN CONLEY CASH, : **Case No.: 8:16-CV-03389-SDM-MAP**
:
                Plaintiff, :
   v. :
:
BRIDGECREST CREDIT COMPANY, LLC, :
:
                Defendant. :
:
--------------------------------------------------------------

### DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS WITH SUPPORTING MEMORANDUM OF LAW

Defendant Bridgecrest Credit Company, LLC ("Bridgecrest"), pursuant to 9 U.S.C. § 1 *et seq*. and M.D. Fla. L.R. 3.01, moves for the entry of an order compelling Plaintiff Erin Conley Cash ("Plaintiff") to arbitrate the claims asserted in this action and stay proceedings. The grounds for this motion are more fully set forth below in Bridgecrest's Memorandum of Law, pursuant to M.D. Fla. L.R. 3.01(a).

**MEMORANDUM OF LAW**

I.  **INTRODUCTION**

Plaintiff's husband, Fabian Cash, purchased a vehicle from nonparty DriveTime Car Sales Company, LLC ("DriveTime"). Mr. Cash provided the number at issue (the "Number") as his phone number in the application he submitted to DriveTime. The underlying contract permits DriveTime or its assigns to contact Mr. Cash at any "telephone number you provide us." This is the sole reason Bridgecrest called the Number, leading to Plaintiff's lawsuit alleging a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fl. Stat. § 559.72 *et seq*. ("FCCPA").

At the time of the purchase of the vehicle, Mr. Cash executed an arbitration agreement. Plaintiff is bound by that arbitration agreement. A non-signatory is estopped from avoiding arbitration if he knowingly seeks the benefit of the contract containing the arbitration clause while simultaneously disavowing what he believes to be a disadvantage of the contract, namely arbitration. Plaintiff benefitted from the underlying contract because he drove the vehicle with knowledge of the account. Plaintiff is listed as a policy holder under the vehicle's insurance policy. Just last week, the vehicle was repossessed for failure to make payments. Immediately thereafter, Plaintiff's counsel contacted the undersigned to report that "Plaintiff's vehicle," was repossessed and asked what Plaintiff needs to do to get "his car back."

For the foregoing reasons and the reasons set forth below, this Court should compel Plaintiff to arbitrate his claims and dismiss this action.

II.  **STATEMENT OF FACTS**

  A.  **The Purchase of the Vehicle.**

On January 14, 2015, Mr. Cash and DriveTime entered into a Simple Interest Retail Installment Contract (the "Contract") pursuant to which Mr. Cash purchased a 2008 Chevrolet

2

Trailblazer (the "Vehicle"). *See* Declaration of Lionel Holguin ("the Holguin Decl.") at ¶ 3.[1] A true and correct copy of the Contract is attached to the Holguin Decl. as Exhibit 1. The Contract expressly permitted DriveTime or its assigns to contact Mr. Cash using a "prerecorded/artificial voice messages, text messages, chat, instant messages, and automatic dialing systems." *See* Ex. 1, Contract at p. 4. The Contract also permitted DriveTime or its assigns to contact Mr. Cash at "any telephone number you provide us." *Id*.

The Contract required Mr. Cash to insure the Vehicle. *See* Ex. 1, Contract at p. 4. To obtain financing for the Vehicle, Mr. Cash needed to present DriveTime with written proof of insurance. *Id*. As such, Mr. Cash provided DriveTime with a verification of insurance coverage from Geico (the "Insurance Verification") which covered the Vehicle.[2] *See* Ex. A, Holguin Decl. at ¶ 5. The Insurance Verification named Plaintiff as the insured and listed Mr. Cash as an active driver on the policy. *Id*. at ¶ 6; *see also* Ex. 2, Insurance Verification. The Insurance Verification had an effective date of September 28, 2014 and an expiration date of March 3, 2015. *See* Ex. 2, Insurance Verification. These dates correspond to the purchase date of the Vehicle. *See* Ex. 1, Contract at p. 1. The Insurance Verification also expressly covered the Vehicle. *See* Ex. 2, Insurance Verification.

---

[1] A true and correct copy of the Holguin Declaration is attached to the Motion as Exhibit A. The Court may consider the Holguin Declaration in deciding the Motion. *See Pope v. EZ Card & Kiosk LLC*, No. 15-61046-CIV-MARRA, 2015 U.S. Dist. LEXIS 121507, at *9 (S.D. Fla. Sept. 11, 2015) ("For the purposes of a motion to compel arbitration, the Court may consider affidavits.") (citing *Samadi v. MBNA America Bank*, N.A., 178 Fed. App'x 863, 866 (11th Cir. 2006)); *Ferriol v. Parrillada Las Vacas Gordas, Inc.*, No. 15-20636-CIV, 2015 U.S. Dist. LEXIS 56934, at *3-4 n.1 (S.D. Fla. Apr. 30, 2015) ("This Court may consider the Arbitration Agreements in ruling on a Motion to Compel Arbitration."); *Schriever v. Navient Solutions, Inc.*, No. 2:14-cv-596, 2014 U.S. Dist. LEXIS 175420, at *6 (M.D. Fla. Dec. 17, 2014) ("Motions to compel arbitration generally raise factual attacks. When a party makes a factual attack, the court may consider matters outside the pleadings.") (citations omitted)).

2 A true and correct copy of the Insurance Verification is attached to the Holguin Decl. as Exhibit 2.

The Contract was subsequently assigned to DT Acceptance Corporation ("DTAC") (now named Bridgecrest Acceptance Corporation effective April 5, 2016) (hereinafter "Bridgecrest Acceptance" or "Defendant"). *See* Ex. A, Holguin Decl. at ¶ 7. Bridgecrest is the servicer of the Contract and an affiliate of DriveTime. *Id*. at ¶ 8.

**B.     The Arbitration Agreement.**

Mr. Cash also executed an arbitration agreement (the "Arbitration Agreement") that covers disputes arising from or relating to, *inter alia*, the Contract, oral and written statements related to the Contract, the servicing of the Contract, and the collection of amounts owed under the Contract.[3] *See* Ex. A, Holguin Decl. at ¶ 9. It expressly covers statutory claims. *See* Ex. 3, Arbitration Agreement at p. 2. Critically, the Arbitration Agreement defines "You/Your" as "you and/or any of your heirs or personal representatives." *Id*. at p. 1.

The Arbitration Agreement provides the following notice at the very top:

> **NOTICE OF ARBITRATION AGREEMENT**
>
> Unless you reject this Agreement, this Agreement provides that upon your or our election, all disputes between you and us will be resolved by **BINDING ARBITRATION**.
>
> If you or we elect arbitration, you will be **GIVING UP YOUR RIGHT TO GO TO COURT** to assert or defend your rights under the Contract (except for individual claims that may be taken to small claims court).
>
> Your rights will be determined by a **NEUTRAL ARBITRATOR** AND **NOT** by a **JUDGE OR JURY. YOU WILL BE WAIVING YOUR RIGHTS TO A JURY TRIAL.**
>
> You are entitled to a **FAIR HEARING**, but arbitration procedures are simpler and more limited than rules that apply in court. **YOU WILL NOT HAVE THE RIGHT TO BE A MEMBER OR REPRESENTATIVE IN A CLASS ACTION OR A PRIVATE ATTORNEY GENERAL ACTION IN COURT OR IN ARBITRATION.**
>
> Arbitrator decisions are enforceable as any court order and are subject to **VERY LIMITED COURT REVIEW.**
>
> **THE ARBITRATION ADMINISTRATOR'S FEES MAY BE MORE THAN THE FEES CHARGED BY A COURT.**
>
> **READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE YOU SIGN.**

---

[3] A true and correct copy of the Arbitration Agreement is attached to the Holguin Decl. as Exhibit 3.

*See* Ex. 3, Arbitration Agreement at p. 1.

Further, the Arbitration Agreement broadly defines "claim" as follows:

> Claim means any claim, dispute or controversy between you and us arising from or related to one or more of the following:
>
> (a) The Contract.
>
> (b) The vehicle or the sale of the vehicle.
>
> (c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
>
> (d) The relationships resulting from the Contract.
>
> (e) Advertisements, promotions or oral or written statements related to the Contract.
>
> (f) The financing terms.
>
> (g) Your credit application.
>
> (h) The origination and servicing of the Contract.
>
> (i) The collection of amounts you owe us.
>
> (j) Any repossession, or replevin, of the vehicle.
>
> (k) Your personal information.
>
> (l) The rescission or termination of the Contract.

*See* Ex. 3 at p. 2. Per the Arbitration Agreement, the term "claim" has the "broadest reasonable meaning," includes claims "of every kind and nature," and "statutory claims." *Id*.

The Arbitration Agreement also afforded Mr. Cash a thirty day period to "reject" the Arbitration Agreement. *See* Ex. 3 at p. 3. The following notice appears before the signature line of the Arbitration Agreement:

> **BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

*See* Ex. 3 at p. 5. Mr. Cash did not reject the Arbitration Agreement and the Complaint does not allege otherwise. *See* Ex. A, Holguin Decl. at ¶ 10.

### C. The Repossession of the Vehicle

Mr. Cash became late on his payments under the Contract which necessitated Bridgecrest to call the Number to discuss the delinquency and loss mitigation alternatives. *See* Ex. A, Holguin Decl. at ¶¶ 11-12. Ultimately, Mr. Cash stopped making any payments under the Contract. *Id*. at ¶ 13. Mr. Cash's failure to make his contractual payments caused Bridgecrest to repossess the Vehicle. *Id*. at ¶14. The Vehicle was repossessed last week. *Id*. at ¶ 15. Immediately thereafter, Plaintiff's counsel emailed the undersigned to report that "Plaintiff's vehicle," was repossessed and asked what Plaintiff needs to do to get "his car back."[4] Accordingly, Plaintiff used the Vehicle and benefitted therefrom. Plaintiff should be compelled to arbitrate his claims against Bridgecrest, and the proceeding should be stayed.

## III. LEGAL ARGUMENT

### A. Plaintiff's Claims Are Subject To Arbitration

In bringing this action in federal court, Plaintiff overlooks that the Arbitration Agreement requires arbitration of his claims. Under the FAA, a court must stay any proceeding that involves an issue subject to arbitration under a written arbitration agreement. *See* 9 U.S.C. § 3. Courts should order the parties to arbitrate upon concluding that a valid arbitration agreement exists without reviewing the merits of the case. 9 U.S.C. §§ 3, 4; *Gay v. CreditInform*, 511 F.3d

---

[4] A true and correct copy of the email is attached to the Motion as Exhibit B.

369, 386 (3d Cir. 2007); *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999); *Cronin v. CitifinancialServs., Inc.*, 352 Fed. Appx. 630, 634 (3d Cir. 2009); *IBEW Sys. Council U-4 v. Fla. Power & Light Co.*, 627 Fed. Appx. 898, 900-901 (11th Cir. 2015).

Section 2 of the FAA makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA creates a body of federal substantive law of arbitrability which is applicable to arbitration agreements in contracts that involve interstate commerce.  *See Perry v. Thomas*, 482 U.S. 483, 489 (1987).

Federal law strongly favors the arbitration of disputes and requires that courts rigorously enforce arbitration agreements.  *See Marmet Health Care Center v. Brown*, 132 S. Ct. 1201, 1203 (2012); *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011); *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Seaboard Coast Line R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir. 1982); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015)   Indeed, it is well recognized that:

> [The fact] that arbitration procedures are more streamlined than federal litigation is not a basis for finding the forum somehow inadequate; the relative informality of arbitration is one of the chief reasons that parties select arbitration.  Parties "trad[e] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."

*14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1471 (2009) (citation omitted).

Moreover, arbitration is favored in consumer disputes: "[i]ndeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less

7

expensive alternative to litigation." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 280 (1995) (citations omitted); *See*, *e.g.*, *Concepcion* (enforcing arbitration provision in contract between consumer and phone company); *Randolph*, 531 U.S. at 91-92 (enforcing arbitration clause between consumer and lender); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999) (enforcing arbitration provision between borrower and consumer finance company); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (enforcing arbitration provision in payday loan contract), *cert. denied*, 537 U.S. 1087 (2002); *Stout v. J.D. Byrider,* 228 F.3d 709, 715 (6th Cir. 2000) (enforcing arbitration provision in case involving sale of a car); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) (enforcing arbitration provision between consumer and computer manufacturer), *cert. denied*, 522 U.S. 808 (1997); *Parnell*, 804 F.3d 1142, 1149 (enforcing arbitration provision in payday loan contract). This is true even in the face of an alleged disparity in the parties' bargaining power. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) (enforcing arbitration clause in allegedly usurious payday loan agreement); *CreditInform*, 511 F.3d at 369 (enforcing arbitration clause in dispute between consumer and credit repair organization). As more fully discussed below, the FAA mandates that Plaintiff's claims be arbitrated.

  **B.  The Federal Arbitration Act Applies To The Arbitration Agreement And Plaintiff's Claims.**

  The FAA provides that a written arbitration agreement contained in a "contract evidencing a transaction involving commerce. . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act defines "commerce" as "commerce among the several states." 9 U.S.C. § 1. "[T]he word 'involving'. . . signals an intent to exercise Congress's commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction. . .turn[s] out, <u>in fact</u>, to

8

have involved interstate commerce." *Allied-Bruce Terminix Cos.*, 513 U.S. at 276-77 (emphasis in original). In *Citizens Bank v. Alafabco, Inc.*, the United States Supreme Court confirmed that Congress, in section 2 of the FAA, exercised "the broadest permissible exercise" of its Commerce Clause power, and it admonished (and reversed) the Alabama Supreme Court for applying a "cramped view" of the Commerce Clause power. 539 U.S. 52, 56, 58 (2003); *see also Fluor Daniel Intercontinental, Inc. v. General Elec. Co.*, No. 98 Civ. 7181(WHP), 1999 WL 637236, at *3 (S.D.N.Y. Aug. 23, 1999) (noting that "[a]s to the 'involving commerce' requirement, courts have construed the phrase broadly").

The instant matter clearly involves commerce under the FAA. Plaintiff and Bridgecrest are citizens of different states. Plaintiff is a resident of Florida and Bridgecrest is a citizen of Arizona. *See* Compl. at ¶¶ 9; 13. Accordingly, "commerce" exists under section 2 of the FAA. *See*, *e.g.*, *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 623-25 (3d Cir. 2009) (finding interstate commerce to exist where Pennsylvania borrower travels to Delaware to obtain a loan); *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 560 n.1 (N.D. Ohio 2004) (observing that "loan transactions historically have been evaluated under the FAA because of the banking industry's connection to commerce"); *Providian Nat'l Bank v. Screws*, 894 So. 2d 625, 627 (Ala. 2003) (credit card agreement between bank and the holders of its credit card clearly involves interstate commerce); *Roberson v. Money Tree of Ala., Inc.*, 954 F. Supp. 1519, 1523 (M.D. Ala. 1997) (interstate commerce existed where loans of Alabama borrowers were approved in Georgia and proceeds were wired from Georgia); *Staples v. Money Tree, Inc.*, 936 F. Supp. 856 (M.D. Ala. 1996) (loan transaction involving out of state lenders was a transaction involving commerce subject to the FAA); *Monroe v. Citigroup, Inc.*, No. 4:03cv20-SPM, 2003 U.S. Dist.

LEXIS 26316, at *4 (N.D. Fla. Aug. 5, 2003) (noting that commercial loan transaction involves interstate commerce within the meaning of the FAA).

Moreover, the Arbitration Agreement specifically provides that "because the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement." *See* Ex. 3 at p. 4. It is well-settled that the federal courts construe this language as evidence of intent for the FAA to apply. *See*, *e.g.*, *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (finding FAA applied because "the Contract itself provides that '[t]he Federal Arbitration Act governs this Arbitration Clause. . . .'"); *Staples*, 936 F. Supp. 856, 858 (M.D. Ala. 1996); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989) (courts must "'rigorously enforce' [arbitration] agreements according to their terms"). Accordingly, a valid arbitration agreement exists, and Plaintiff's claims are required to be litigated in that forum.

   **C.**  **There Is A Written Arbitration Agreement Between The Parties.**

The applicable inquiry under the FAA "is two-fold: whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims." *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir. 1991). "Arbitration agreements are presumptively valid and enforceable." *Monserrate v. Hartford Fire Ins. Co.*, 2014 WL 4101684, at *1 (M.D. Fla. August 20, 2014).

Further, the FAA specifically provides that arbitration agreements are enforceable according to their terms:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or any agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

10

> irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Here, the Arbitration Agreement expressly provides for arbitration. *See* Ex. 2.

"Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *Gregory v. Electro–Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996). "Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001)

Indeed, courts may only invalidate arbitration agreements based upon generally applicable contract defenses. 9 U.S.C. § 2; *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). Moreover, such challenges must be directed specifically and solely to the arbitration agreement and may not be advanced in such a manner that would subject arbitration agreements to special scrutiny. *See*, *e.g.*, *Perry*, 482 U.S. at 493 n.9; *Cardegna*, 126 S. Ct. at 1218. Thus, an arbitration agreement must be upheld and enforced by the courts even though the rest of the contract may later be held invalid by the arbitrator.

As there is a written Arbitration Agreement and Mr. Cash failed to exercise his thirty day window to opt out of the Arbitration Agreement, (*See* Ex. 3; *see also* Exhibit A, Holguin Decl. ¶¶ 8-9), DriveTime has easily satisfied the first prong to compel arbitration of Plaintiff's claims.

### D. The Scope Of The Arbitration Agreement Covers Plaintiff's Claims.

The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25 (citations omitted). Accordingly, the Supreme Court

dictates that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Technologies, Inc.*, 475 U.S. at 650. The presumption in favor of arbitrability "is particularly strong when the arbitration clause in question is broad," *id*. Indeed, the Supreme Court in *Randolph* has made clear that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." 531 U.S. at 91.

Here, the Arbitration Agreement requires the parties to arbitrate any claim or dispute that arises from "the collection of amounts you owe," the "Contract," and the "servicing of the Contract." *See* Ex. 3 at p. 2. The Arbitration Agreement covers "claims of every kind and nature, including…..statutory claims." *Id*. The Complaint asserts that the TCPA and FCCPA violations occurred "in an effort related to collection of the subject account." Compl. at ¶ 18.

Courts routinely compel arbitration of such TCPA and FCCPA claims. Accordingly, the Arbitration Agreement covers Plaintiff's claims and should be enforced. *See, e.g., Betancourt v. Green Tree Servicing, LLC*, No. 8:13-cv-2759-T-30AEP, 2013 U.S. Dist. LEXIS 176728, at *11 (M.D. Fla. Dec. 17, 2013) (compelling arbitration of an FCCPA claim); *Jones v. Sallie Mae, Inc.*, No. 3:13-cv-837-J-99MMH-MCR, 2013 U.S. Dist. LEXIS 170968, at *18-19 (M.D. Fla. Sept. 20, 2013) (granting defendant's motion to compel arbitration of plaintiff's TCPA and FCCPA claims); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1224-25 (M.D. Fla. 2013) (holding that "[p]laintiff's claims of TCPA and FCCPA violations fall within the scope of the arbitration clause set forth in Service Agreement").

### E. Plaintiff is Estopped From Avoiding The Arbitration Agreement.

Federal courts have recognized that the obligation to arbitrate under the FAA does not attach only to one who has personally signed the arbitration provision. *Nguyen v. Barnes &*

12

*Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Instead, a non-signatory to an arbitration agreement may be compelled to arbitrate where the non-signatory "knowingly exploits" the benefits of the agreement and receives benefits flowing directly from the agreement. *Nguyen*, 763 F.3d at 1179; *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009) (discussing when equitable estoppel may "preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes") (citations omitted)). Equitable estoppel typically applies to third parties who benefit from an agreement made between two primary parties. *See, e.g., Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267-68 (5th Cir. 2004) (estopping non-signatory wife of borrower from avoiding arbitration clause of loan agreement made between her husband and lender); *Parillo v. Nataro*, 34 Misc. 2d 800, 229 N.Y.S.2d 492, 493-94 (Sup. Ct. 1962) (applying equitable estoppel to third-party beneficiary of insurance contract).

The equitable estoppel doctrine has been applied directly to TCPA actions under similar circumstances. In *A.D. v. Credit One Bank, N.A.*, a minor plaintiff, acting through her guardian ad litem, filed a putative class action lawsuit against Credit One Bank ("Credit One"), under the TCPA. No. 14 C 10106, 2016 WL 4417077, at *1 (N.D. Ill. Aug. 19, 2016). While the plaintiff's mother had an account with Credit One, plaintiff, a minor, did not have an account with Credit One and was not named on her mother's account. *Id*. Credit One moved to compel arbitration of the plaintiff's claims based on plaintiff's use of her mother's credit card on at least one occasion and plaintiff's allowance of her mother to use her cellphone to call Credit One to make an inquiry about her account. *Id*. at *10. Credit One contended that those actions made the plaintiff an authorized user under her mother's cardholder agreement and a direct beneficiary

13

of the contract. *Id*. The Court agreed and granted Credit One's motion to compel arbitration. The Court reasoned:

> [t]he doctrine of estoppel exists in this context to prevent a litigant from unfairly receiving the benefit of a contract while at the same time repudiating what it believes to be a disadvantage in the contract, namely, the contractual arbitration provision. That is precisely what [plaintiff] is attempting to do. The Cardholder Agreement allowed [plaintiff] to represent that Credit One would pay for a purchase she made. It also requires the cardholder and any authorized user to arbitrate any claims arising out of communications Credit One makes and collection activities it engages in concerning the account. [Plaintiff] is bound to terms of the Cardholder Agreement, and Credit One has a contractual right to arbitrate this dispute.

*Id*. at *11 (internal citations omitted).

Similarly, in *Montoya v. Comcast Corp.*, the plaintiffs filed a complaint against Comcast asserting a variety of federal, state, and common law claims arising out of the allegation that Comcast allowed third parties access to plaintiffs' personal identifying information and did not maintain adequate safeguards. No. 2:15-cv-02573, 2016 U.S. Dist. LEXIS 130806 at *5 (E.D. Cal. Sept. 22, 2016). The complaint alleged that the plaintiffs resided in a home for which Comcast provided cable television, internet, and other services. *Id*. at *1-2. Yet, the plaintiffs maintained that they did not receive a written contract for the services from Comcast. *Id*. at *2. Such contract would have included an arbitration provision. *Id*. Comcast alleged that there was a customer on record for services at the plaintiff's residence, but that he or she was not a party to the lawsuit. *Id*. The Court found it unnecessary to determine why or how plaintiffs were using Comcast's services for its arbitrability analysis. *Id*. In support of its motion to compel arbitration, Comcast argued that plaintiffs could not accept the benefits of its user services without the obligations that go along with those services. *Id*. at *10. The Court agreed and held that estoppel precluded plaintiffs from knowingly exploiting Comcast's service while

14

simultaneously trying to avoid the burden that the service contract imposes, namely the arbitration provision. *Id*. at *14.

Like the plaintiffs in *A.D.* and *Montoya*, Plaintiff knowingly sought and obtained numerous benefits from the Contract. Plaintiff benefitted from the Contract because he drove the Vehicle with knowledge of the Account. *See* Ex. A, Holguin Decl. at ¶ 17. The insurance policy that was procured specifically for the purchase of the Vehicle listed Plaintiff as insured. *See* Ex. A, Holguin Decl. at ¶ 6; *see also* Ex. 2, Insurance Verification.

In a nearly identical situation, the United States District Court for the Southern District of Mississippi granted DriveTime's motion to compel arbitration. *See DriveTime Car Sales Company, LLC v. Cook*, No. 3:15-cv-528-DPJ-FKB (S.D. Miss. Feb. 24, 2016).[5] In *Cook*, just as in this case, a relative of the plaintiff purchased the vehicle and executed the arbitration agreement. *Id*. at *1-2. While the plaintiff's niece purchased the vehicle, there was no dispute that the plaintiff drove the vehicle and added the vehicle to his insurance policy. *Id*. at *8. Based on these facts, the Court in *Cook* concluded that plaintiff was not a "complete stranger" to the contract and benefited therefrom when he helped his niece purchase a vehicle that he would also drive. *Id*. at *9. The Court also found that the plaintiff benefitted from the operative contract because he helped his niece convince DriveTime to release her from her initial contract with DriveTime in exchange for a new contract, which prevented collection efforts against assets he shared with his niece. *Id*. Concluding that the plaintiff realized a direct benefit from the contract, the *Cook* Court found that the plaintiff was bound to the arbitration agreement by estoppel.[6] *Id*.

---

[5] A true and correct copy of the *Cook* decision is attached hereto as Exhibit C.

[6] The arbitration agreement in Cook is identical to the Arbitration Agreement present here.

15

As Plaintiff received multiple direct benefits from the Contract and Vehicle, including driving the Vehicle, arbitration should be compelled on the grounds of estoppel. *See*, *e.g.*, *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (vacating district court's denial of defendants' motion to compel arbitration where the court failed to examine whether to apply estoppel to bind a nonsignatory to the arbitration agreements).

F.     **Bridgecrest Is Entitled To Enforce The Arbitration Agreement.**

It is well-settled that when the parties to a contract, according to the language of the clause at issue, intend to benefit a non-party, that non-party may compel arbitration as a third-party beneficiary. *See, e.g., E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001) (a third party beneficiary is bound by contract terms where its claims arise out of the underlying contract); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165-66 (5th Cir. 1998) (third-party beneficiaries bound by arbitration agreement), *cert. denied*, 525 U.S. 876 (1998); *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014) (recognizing that Florida courts have required third-party beneficiaries to arbitrate).

This principle is wholly applicable here, and permits Bridgecrest to enforce the terms of the Arbitration Agreement. Indeed, the Arbitration Agreement explicitly provides that "[u]nless you reject this Agreement, this Agreement provides that upon your or our election, all disputes between you and us will be resolved by **BINDING ARBITRATION**." Ex. 3 at p. 1 (emphasis in original). Moreover, the terms "Us/We/Our" are defined as:

> **DriveTime, any purchaser, assignee or servicer of the contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of the foregoing**. Us/We/Our also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the

16

> vehicle, if such third party is named as a co-defendant with us in a Claim you assert.

*Id.* (emphasis added). Bridgecrest is the servicer of the Contract and an affiliate of DriveTime. Ex. A, Holguin Decl. at ¶ 8. Accordingly, under the plain language of the Arbitration Agreement, Bridgecrest is entitled to enforce the Arbitration Agreement. *See* Ex. 3 at p. 1.

### G. The Case Should Be Stayed Pending Arbitration

Once a court determines that claims are subject to arbitration, all proceedings must be stayed pending arbitration. *See* 9 U.S.C. § 3 (providing that "the court. . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration. . . shall on application of one of the parties stay the trial of the action. . . ."). This provision is "mandatory" and courts lack discretion to deny the request to stay. *See, e.g., Puro Systems, Inc. v. Bevilacqua*, 2010 WL 3259966, at *1 (S.D. Fla. August 18, 2010) (observing that "[t]he Eleventh Circuit prefers that district courts stay rather than dismiss arbitrable claims."). Accordingly, the instant lawsuit should be stayed pending the completion of arbitration.

**WHEREFORE**, Defendant Bridgecrest Credit Company, LLC respectfully requests the entry of an Order compelling arbitration, staying the proceedings and for such other and further relief that the Court deems just and proper.

**CERTIFICATE OF COUNSEL**

Pursuant to M.D. Fla. L.R. 3.01(g), prior to filing this motion undersigned counsel for Bridgecrest has made reasonable efforts to confer with Plaintiff's counsel regarding the relief requested herein. On March 22, 2017, the undersigned emailed Plaintiff's counsel regarding Bridgecrest's intention to file a motion to compel arbitration and the reasons in support of same. A copy of the Arbitration Agreement was attached to the undersigned's email. On the same day, Plaintiff's counsel responded by email and noted that she will review the Arbitration Agreement. On March 23, 2017, the undersigned emailed Plaintiff's counsel again to inquire whether Plaintiff would object to Bridgecrest's motion to compel arbitration. The undersigned also asked Plaintiff's counsel for an extension to respond to Plaintiff's discovery requests until the motion to compel arbitration is ruled upon. Plaintiff's counsel has not responded to the undersigned's March 23, 2017 email.

As of the filing of this motion, the undersigned has not received a response from Plaintiff's counsel. Pursuant to M.D. Fla. L.R. 3.01(g), the undersigned will continue her efforts to contact Plaintiff's counsel expeditiously after filing the instant motion and will supplement the motion promptly with a statement certifying whether or to what extent the parties have resolved the issue presented in the motion.

Dated: March 23, 2017

Respectfully submitted,

By: /s/ *Jenny N. Perkins*
Jenny N. Perkins, Esquire
Florida Bar No. 77570
perkinsj@ballardspahr.com
Martin C. Bryce, Jr. Esquire
(Admitted Pro Hac Vice)
bryce@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Fl.
Philadelphia, PA 19103
(215) 864.8378 (Telephone)
(215) 864.8999 (Facsimile)

Amy L. Drushal
Florida Bar No. 0546895
adrushal@trenam.com
TRENAM, KEMKER, SCHARF,
BARKIN, FRYE, O'NEILL &
MULLIS, P.A.
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
(813) 227.7463 (Telephone)

*Attorneys for Defendant Bridgecrest Credit Company, LLC*